IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

BK 07-70202-CMS-13

JACOB ROSS HOLMAN and
AMYE MICHELLE HOLMAN

    Debtors.

JACOB ROSS HOLMAN, AMYE MICHELLE
HOLMAN, GERALD C. GARNER and
STACY KIM GARNER, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.        AP 09-70031-CMS

CITIMORTGAGE, INC.,

    Defendant.

## MEMORANDUM OF DECISION

This matter came before the court on August 3, 2010 for hearing on Plaintiffs' Motion to Strike Jury Demand ("Motion to Strike"). (AP Doc 40). Steve Olen and Claude M. Burns, Jr. appeared on behalf of Jacob Ross Holman, Amye Michelle Holman, Gerald C. Garner and Stacy Kim Garner (collectively "the Plaintiffs"). Steven J. Bumgarner appeared on behalf of Citimortage, Inc. ("Defendant"). After consideration of the arguments of counsel and briefs submitted in support of their arguments, the court **GRANTS** the Plaintiffs' Motion to Strike Jury Demand.

## JURISDICTION

The Bankruptcy Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334(a). This

1

court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 157(b)(2). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984.

**FINDINGS OF FACT**

The Plaintiffs allege the following in the Amended Complaint: Plaintiffs Jacob Holman and Amye Holman filed their Chapter 13 bankruptcy petition February 8, 2007. On December 8, 2007, the Defendant, with the active participation and consent of one or more of its attorneys, filed an improper and fraudulent affidavit in support of a motion for relief from stay that Defendant had filed in Plaintiffs Jacob and Amye Holman's bankruptcy case. Defendant's affidavit was improper and fraudulent in that the signature page was executed and/or notarized separate and apart from the affidavit. Defendant's affidavit purportedly was signed by its employee Monique Bequette on December 6, 2007, and purportedly was notarized by its employee Jennifer Llamas on December 3, 2007. The affiant's signature and the notary's signature are on a separate page from the substantive paragraphs of the affidavit, and that is a common and widespread practice in numerous other affidavits filed by Defendant in support of motions for relief from stay. The pages of the affidavit are not numbered, and that is a common and widespread practice in numerous other affidavits filed by Defendant in support of motions for relief from stay.

Plaintiffs Gerald Garner and Stacy Garner filed their Chapter 13 bankruptcy petition August 27, 2004. One February 26, 2005, the Defendant, with the active participation and consent of one or more of its attorneys, filed an improper and fraudulent affidavit in support of a motion for relief from stay that Defendant had filed in Plaintiffs Gerald and Stacy Garner's bankruptcy case.

Defendant's affidavit was improper and fraudulent in that the signature page was executed and/or notarized separate and apart from the affidavit. Defendant's affidavit purportedly was signed by its employee Ann Marie Baker on February 21, 2005 and purportedly was notarized by its employee Christina Crampton on February 21, 2005. Defendant's affidavit states that a mortgage is attached to Defendants' motion for relief. However, the mortgage bears a fax legend dated February 24, 2005 from Hale County Probate Court. The affiant's signature and the notary's signature are on a separate page from the substantive paragraphs of the affidavit, and that is a common and widespread practice in numerous other affidavits filed by Defendant in support of motions for relief from stay. The pages of the affidavit are not numbered, and that is a common and widespread practice in numerous other affidavits filed by Defendant in support of motions for relief from stay.

Essentially, the Amended Complaint alleges that Defendant has made an institutional practice of filing false affidavits in this court, and elsewhere,[1] in support of its Motions for Relief from the Automatic Stay. The Amended Complaint further alleges that the allegedly false affidavits submitted by the Defendant in the Plaintiffs' cases are just two examples of a widespread practice by the Defendant of filing improper affidavits. It is alleged that this harms not only individual debtors, but also defiles the court and prevents it from operating properly.

---

[1]The court notes that there are class action suits pending in both the Southern and Middle Districts of Alabama with complaints substantially similar to the complaint in this case. In both of these class action suits, the Defendant filed a demand for jury trial and the Plaintiffs in those adversary proceedings filed a Motion to Strike Jury Demand. The Motion to Strike Jury Demand was granted in both cases. In the Southern District of Alabama, Judge Margaret Mahoney entered an Order granting the Plaintiffs' Motion to Strike Jury Demand. In that case, the Defendant sought leave for an interlocutory appeal. That request was denied by District Judge William Steele. In the Middle District of Alabama, Judge William Sawyer granted Plaintiffs' Motion to Strike Jury Demand. Copies of each of these orders and memorandums are attached to Plaintiff's Memorandum in Support of Motion to Strike Jury Demand. (AP Doc 41)

3

Plaintiffs' Amended Complaint asserts three separate causes of action. First, the Plaintiffs assert that Defendant's "actions violate the Bankruptcy Code and Rules and constitute an abuse of the bankruptcy process." Plaintiffs further "invoke the Court's inherent powers and the Court's powers under § 105 of the Bankruptcy Code." In the prayer for relief, the Plaintiffs seek the following damages as a result of the Defendant's alleged wrongdoing:

A. Plaintiffs and the class members seek all civil relief damages available to them and the class pursuant to § 105 and the Court's inherent powers, including disgorgement and refund or credit of any fees or charges posted to their accounts and/or collected from them in connection with any motions for relief from stay, motions for adequate protection, or any similar motions where improper and/or fraudulent affidavits, declarations, or certifications were filed in support of said motions, plus interest; sanctions and punitive damages, if punitive damages are available in a civil § 105 context, as determined by the court; attorneys fees and costs in amounts to be determined by the court and an order requiring the Defendant to pay reasonable attorney fees, costs and expenses to Plaintiffs' counsel for prosecution of this action; and any other civil relief damages that the court deems appropriate.

B. Such other and different civil relief pursuant to § 105 and the Court's inherent powers as may be appropriate, including an order declaring Defendant's practices improper, illegal and fraudulent.

In the second cause of action, the Plaintiffs assert that Defendant's "actions violate the Bankruptcy Code and Rules and constitute fraud on the bankruptcy court." Plaintiffs further "invoke the Court's inherent powers and the Court's powers under § 105." In its prayer for relief the Plaintiffs seek the same damages as those sought in the first cause of action.

In the third cause of action, the Plaintiffs assert that they are entitled to prospective injunctive relief that enjoins the Defendant from engaging in the acts and practices described in the Amended Complaint with respect to any debtor who is a member of the class certified by the court. Plaintiffs further "invoke the Court's inherent powers and the Court's powers under § 105." Again, the Plaintiffs seek the same damages as those sought in the first and second causes of action.

At the conclusion of the complaint, the Plaintiffs set out the following language, which limits the damages being sought: "NO CRIMINAL SANCTIONS, NO CRIMINAL PENALTIES, NOR ANY OTHER CRIMINAL RELIEF IS SOUGHT BY PLAINTIFFS OR THE CLASS IN THIS COMPLAINT."

## CONCLUSIONS OF LAW

Defendant, in both the Answer and in the separate Demand for Jury Trial filed with the court on June 3, 2010, has requested a trial by jury pursuant to Federal Rule of Civil Procedure 38, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9015. (AP Docs. 34 & 35). In response to this demand, the Plaintiffs filed the Motion to Strike Jury Demand. (AP Doc. 40). The Defendant objects to the Plaintiffs' Motion to Strike. (AP Doc. 48).

Rule 38(a) provides: "The right of trial by jury as declared by the Seventh Amendment to the Constitution - or as provided by a federal statute-is preserved to the parties inviolate." FED. R. CIV. PRO. 38(a). "Rule 38 neither enlarges nor diminishes a party's right to a jury trial in federal court. Whether a right to jury trial exists depends on the Seventh Amendment and any federal statutory jury rights." Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 38 (2010).

> In federal court, the right to jury trial is governed by federal law, even in diversity cases where the underlying claims arise from state substantive law. To determine whether a jury right exists under federal law, courts conduct a two-step inquiry. First the court must determine whether Congress has created an express legal right to a trial by jury on [the issue before the court]. If so, the parties have a right to a jury trial. If not, the court then must determine if the Seventh Amendment guarantees such a right."

Id. Neither party has addressed whether the Defendant has a right to a jury trial pursuant to any federal statute. More specifically, the Defendant has not asserted that it is entitled to a trial by jury

5

pursuant to any federal statute. Therefore, this court finds, for purposes of this proceeding, that there is no federal statute which confers upon the Defendant the right to a trial by jury in the causes of action brought pursuant to the Plaintiffs' Amended Complaint. That just leaves the issue of whether the Seventh Amendment to the Constitution does confer such a right to a trial by jury.

The Seventh Amendment to the Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII. The Supreme Court of the United States has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" Granfinanciera v. Nordberg, 492 U.S. 33, 42, 109 S. Ct. 2782 (1989) (*quoting* Parsons v. Bedford, 28 U.S. 433, 447 (1830)). "Although the 'thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791,' the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." Id. (*quoting* Curtis v. Loether, 415 U.S. 189, 193, 94 S. Ct. 1005, 1007 (1974)). In determining whether a party is entitled to a jury trial pursuant to the Seventh Amendment, there is a two-part analysis that a court must undertake:

> First, [the court must] compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, [the court must] examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first.

Id. (citations omitted).

6

Pursuant to the guidelines set forth by the Supreme Court of the United States, this court should first examine whether the causes of action brought pursuant to the Plaintiffs' Amended Complaint are the same as, or analogous to, causes of action that were considered legal, rather than equitable, in late 18th-century English law. The parties did not address this issue in their briefs nor in argument before the court. In the Memorandum in Support of Motion to Strike Jury Demand, the Plaintiffs assert that the claims alleged in the Amended Complaint are equitable and then commence to talk about the remedies sought by the Plaintiffs. In its Response in Opposition to Plaintiffs' Motion to Strike Jury Demand, the Defendant asserts that the claims alleged in the Amended Complaint are legal and then commences to discuss the remedies sought by the Plaintiffs. The court takes this as an agreement between the parties that the issue of whether the Defendant is entitled to a jury trial depends upon the relief requested in the Amended Complaint. The apparent agreement is supported by statements made by the Supreme Court of the United States and the Eleventh Circuit Court of Appeals in case law. See, e.g., Granfinanciera, 492 U.S. at 42 (stating that, in deciding whether a party is entitled to a trial by jury, the determination of whether the remedies sought by a party are legal or equitable is "more important" than the determination of whether the causes of action are legal or equitable); Waldrop v. Southern Co. Servs., 24 F. 3d 152, 156 (11th Cir. 1994) (stating that jury trial was required based on second factor even if the first factor "does not persuasively militate for a jury trial"). Based upon this apparent agreement, this court will analyze the remedies sought by the Plaintiffs and base its ruling on whether the remedies sought in the Amended Complaint are legal or equitable.

The court now turns to the determinative issue in this case: whether the remedies sought by

7

the Plaintiffs in the Amended Complaint constitute legal remedies or equitable remedies.[2] The Amended Complaint seeks "all civil relief damages available to [the Plaintiffs] and the class pursuant to § 105 and the Court's inherent powers." To further clarify the relief sought by the Plaintiffs, the Amended Complaint also contains the following provision: "NO CRIMINAL SANCTIONS, NO CRIMINAL PENALTIES, NOR ANY OTHER CRIMINAL RELIEF IS SOUGHT BY PLAINTIFFS OR THE CLASS IN THIS COMPLAINT." Therefore, the question before the court is whether the civil damages sought pursuant to § 105 and the court's inherent powers are legal or equitable in nature.

The Plaintiff asks for "all civil relief damages available to [the Plaintiffs] and the class pursuant to § 105 and the court's inherent powers." Specifically, the Plaintiff seek disgorgement of any fees or charges received by the Defendant in connection with a motion where an improper or fraudulent affidavit was filed, an order declaring Defendant's practices improper, illegal and fraudulent, sanctions and punitive damages, and attorney fees. The court will examine each category of requested relief in turn.

---

[2] In making a determination as to whether a party is entitled to a trial by jury, there are numerous distinctions relating to remedies that can be raised. In addition to the distinction between legal and equitable remedies, a distinction has been drawn between public and private remedies as illustrated by this quote from the Supreme Court of the United States: "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" <u>Granfinanciera</u>, 492 U.S. at 42 n. 4. Because this court finds that the cause of action is not legal in nature, the issue of whether the remedies are public or private does not need to be addressed.. Another distinction that is often drawn by courts is whether penalties sought in a complaint are criminal or civil. The Defendant spent a lot of time in its brief making the argument that the remedies sought by the Plaintiffs constitute criminal penalties. The Amended Complaint makes it very clear that the Plaintiffs are not seeking criminal penalties. Therefore, there is no need for the court to determine whether any of the penalties sought are criminal in order to make a determination as to whether the Defendant is entitled to a jury trial.

Case 09-70031-JHH    Doc 50    Filed 09/01/10    Entered 09/01/10 13:00:08    Desc Main
Document      Page 8 of 11

The court will first address the request for an "order declaring Defendant's practices improper, illegal and fraudulent." The court finds that this is essentially an equitable remedy: The request for an order is analogous to a request for an injunction; by asking that this court declare that the Defendant's conduct is improper, illegal and fraudulent, the Plaintiffs are essentially asking this court to order the Defendants to not engage in this activity in the future. An injunction is an equitable remedy, not a legal one; therefore, this court finds that the request for an order is an equitable remedy, not a legal one.

The court will next address the request for disgorgement of any fees or charges received by the Defendant in connection with a motion where an improper or fraudulent affidavit was filed. "Generally, an action for money damages was 'the traditional form of relief offered in the courts of law.'" Chauffers, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570, 110 S. Ct. 1339, 1347 (1990) (*quoting* Curtis v. Loether, 415 U.S. 189, 196, 94 S. Ct. 1005, 1009 (1974)). However, a request for monetary relief is not necessarily a legal remedy. Id. For example, the Supreme Court of the United States has "characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'" Id. (*quoting* Tull v. United States, 481 U.S. 412, 424, 107 S. Ct. 1831, 1839 (1987)). See also Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn), No 07-3481, 2008 WL 2078089, at *2 (Bankr. S.D. Tex. May 15, 2008) (*quoting* Allstate Ins. Co. V. Receivable Fin. Co., LLC, 501 F. 3d 398, 413 (5th Cir. 2007) ("'Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. *It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs*.") (emphasis added in Wilborn). Therefore, the disgorgement remedy sought by the Plaintiffs is also equitable in nature.

The court will next address the request for sanctions and punitive damages. Plaintiffs, in

9

their complaint, request "sanctions and punitive damages, if punitive damages are available in a civil § 105 context, as determined by the court; ..." In regards to the request for sanctions, this court finds that an award of sanctions is outside the purview of the equitable vs. legal distinction because "[a]ny court can punish parties who are in contempt of that court without impaneling a jury." Tate v. Citimortgage Inc. (In re Tate), No. 09-01059, slip op. at 3 (Bankr. S.D. Ala. Jan. 6, 2010). In regards to the request for punitive damages, this court declines to decide the issue at this juncture. It is not clear whether the Plaintiffs are legally entitled to seek punitive damages pursuant to § 105; this court has not addressed the issue and the issue has not been clearly addressed by the Eleventh Circuit Court of Appeals. As Judge Steele noted in the Tate case "CitiMortgage has never moved to dismiss plaintiffs' claims for punitive damages on the grounds that such relief is unavailable in a civil § 105 context, and has never taken any other action to bring this critical question to the fore in the Adversary Proceeding." Because this issue is not settled in this circuit, this court is highly reluctant to rule on the issue when it is not properly before this court. If one of the parties wishes to bring this issue before the court, and the court decides that punitive damages are available to Plaintiffs, and also decides that punitive damages are a legal remedy for which the Defendant is entitled to a jury trial, then Defendant may be entitled to a jury trial, at least to the issue of punitive damages.

Finally, the court will address the Plaintiffs' request for attorney's fees. "An award of attorney fees will not be construed as a damage award, and will not give rise to a jury trial right." 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 38.31[5][b][iv] (3rd ed. 2007). The request for attorney's fees is neither legal or equitable in nature and does not affect the analysis being undertaken.

10

This court finds that the relevant relief sought in the Amended Complaint is equitable in nature. Therefore, pursuant to the test adopted by the Supreme Court of the United States, the Defendant is not entitled to a jury trial pursuant to the Seventh Amendment to the United States Constitution.

## CONCLUSION

Federal Rule of Civil Procedure 38 preserves the right to a jury trial, guaranteed by either the Seventh Amendment to the Constitution of the United States or a federal statute. Because the Defendant does not assert that it is entitled to a jury trial pursuant to a federal statute, the matter before the court rests solely on whether the Defendant is entitled to a jury trial pursuant to the Seventh Amendment to the United States Constitution. Because the remedies sought by the Plaintiff in the Amended Complaint are equitable in nature, this court finds that the Defendant is not entitled to a jury trial pursuant to the Seventh Amendment.

As such, this **GRANTS** the Plaintiffs' Motion to Strike Jury Demand.

An Order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this September 1, 2010.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge